FILED

2008 Nov-21  PM 12:35
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JERRY C. DELONG, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]   2:07-CV-1557-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.     Introduction.

The Plaintiff, Jerry C. DeLong, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Mr. DeLong timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. DeLong was forty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education, as well

as an associate's degree in architectural modeling.  (Tr. at 353.)  His past work experiences include employment as a model builder, printing finisher, and a flooring installer.  (Tr. at 72-81.)  Mr. DeLong claims that he became disabled on February 1, 2004, due to back and knee pain, degenerative disc disease, and mild depression.  (Tr. at 19.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the

analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii),  416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do

other work, the claimant is not disabled.  *Id*.

Applying the sequential evaluation process, the ALJ found that Mr. DeLong meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision.  (Tr. at 19.)  He further determined that Mr. DeLong has not engaged in substantial gainful activity since the alleged onset of his disability.  *Id*.  According to the ALJ, Plaintiff's "herniated nucleus pulposus of the lumbar spine, degenerative disc disease, mild depression, and chondromalacia of the left knee" are considered "severe" based on the requirements set forth in the regulations. *Id*.  However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  *Id*.  The ALJ did not find Mr. DeLong's allegations to be totally credible, and he determined that Plaintiff has the following residual functional capacity: sedentary exertional work with a sit-stand option.  *Id*. at 21, 20.

According to the ALJ, Mr. DeLong is unable to perform any of his past relevant work, he is a "younger individual," and he has "at least a high school education," as those terms are defined by the regulations.  *Id*. at 24.

He determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Id*. The ALJ found that Mr. DeLong has the residual functional capacity to perform sedentary work with "additional limitations." *Id*. Because the Plaintiff cannot perform the full range of sedentary work, the ALJ "asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id*. at 24-25. According to the vocational expert, there are over 10,000 jobs in north central Alabama that Plaintiff could perform, "such as interview clerk, receptionist, telephone operator, and general office helper." *Id*. at 25. The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from February 1, 2004 through the date of this decision." *Id*.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1)

whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id*.  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that

the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Mr. DeLong alleges that the ALJ's decision should be reversed and remanded for three reasons.  First, he believes that the "ALJ erred in his pain and credibility findings." (Doc. 5 at 6.)  Second, Plaintiff contends that the "ALJ erred in failing to give greater weight to the opinion of Plaintiff's treating physician."  *Id.* at 9.  Third, Plaintiff contends that the ALJ did not fully develop the record.  *Id.* at 11.

A.    Pain and Credibility Findings.

Plaintiff asserts that the ALJ's evaluation of his subjective complaints of pain was improper.  Specifically, Mr. DeLong alleges that the objective evidence in the record supports the conclusion that his pain is severe enough to constitute a disability. (*See* Doc. 5 at 7-9.)  To establish disability based upon pain and other subjective symptoms, there must be:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); citing *Holt*, 921 F.2d at 1223.  In addition to the objective medical evidence, the ALJ will consider:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c).  However, the ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates "explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

When making a credibility finding, the ALJ is to consider whether the complainant's subjective complaints regarding the "intensity, persistence, and limiting effects of [the] symptoms" are consistent with the objective medical evidence.  20 C.F.R. § 404.1529(c); *see also* Social Security Ruling 96-7p, 1996 WL 374186 ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").  Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210; citing *Foote*, 67 F.3d at 1562.  "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer*, 394 F.3d at

1210-11; quoting *Foote*, 67 F.3d at 1562. (internal quotations omitted).

In this case, although the ALJ found that the Plaintiff does have an underlying medical condition, neither the objective medical evidence nor the other evidence in the record supports the Plaintiff's asserted level of pain or a finding of disability.  The ALJ noted many inconsistencies between the medical findings of Plaintiff's various doctors and Plaintiff's "own description of his [daily] activities."  (Tr. at 20.)  For example, the ALJ noted that while Plaintiff claims "that after taking a double dose of his pain medications, he can sit about forty-five minutes," he also engages in activities such as his own personal care, some housekeeping (including taking out the garbage), listening to music, playing on and repairing computers, talking on the telephone, driving "his girlfriend to and from work," and playing pool with friends.  *Id*.  The ALJ found that these activities are not as limited as one would expect "given the complaints of disabling symptoms and limitations."  *Id*.

Furthermore, the inconsistencies in the objective medical evidence come not only from Plaintiff himself but also from his doctors and chiropractors.  The ALJ noted that the Plaintiff told his doctors that his pain

improved with treatment, and that he, for example, "no longer required steroid injections or facet blocks because his physical therapy has significantly improved his pain." *Id*. Plaintiff also discontinued his physical "therapy because he was feeling much better." *Id*. at 22.

Plaintiff's doctors have, however, imposed some restrictions on what work he is able to do. In 2004, Dr. Capesius, D.C., recommended Plaintiff engage only in "employment where he has sedentary or light duties that do not involve lifting more than 30 pounds or repetitive bending and twisting." *Id*. at 111. Later, in 2005, Dr. Carbonell performed a consultative examination on Plaintiff. Dr. Carbonell found that Plaintiff could only stand and walk for less than six hours per eight hour work day; that he could sit for eight hours per eight hour work day; and she found that Plaintiff "should not lift weight on a regular or on an occasional basis," nor should he "bend, stoop, or crouch on a regular basis." *Id*. at 22 and 255. However, the ALJ did not give significant weight to Dr. Carbonell's findings regarding Plaintiff's ability to lift weight because Dr. Carbonell herself found that Plaintiff "had a full range of motion and could heel/toe walk without significant difficulty, which does not support the restrictions of no lifting or

carrying." *Id*. at 22.  The ALJ also noted that these findings were inconsistent with the other objective medical evidence in the record, as "no treating physician has ever limited the claimant to such a degree." *Id*.  The ALJ did find that Dr. Carbonell's lack of restrictions on Plaintiff's ability to sit for eight hours was "consistent with the other objective medical evidence." *Id*.

The last doctor to treat Plaintiff, Dr. Stevenson, severely limited Plaintiff's potential work activities.  She found that Plaintiff could sit for less than one hour per eight hour work day; that he could stand and walk for less than one hour per eight hour work day; that he should not lift and/or carry more than ten pounds, and that he should only do so "occasionally or less frequently;" and that he should never push and pull, climb and balance, bend, or stoop.  *Id*. at 283.  She also found that Plaintiff's pain is severe enough to distract him from achieving "adequate performance of daily activities or work" and "that physical activity greatly increases the claimant's pain."  *Id*. At 22.  However, the ALJ did not give significant weight to these findings because they were inconsistent with both Plaintiff's description of his daily activities and with the objective medical evidence

from other doctors and chiropractors.  *Id*. at 23.  The ALJ also found these conclusions insignificant because Dr. Stevenson had only been treating Plaintiff for a short period of time, she seemed "to base her opinion largely on claimant's subjective complaints," she did not provide any medical imaging "to substantiate her findings," and "on examination the claimant had a full range of motion."  *Id*.

Based on the evidence explained above, the ALJ found that Plaintiff's "pain was no more than mild to moderate and does not prevent him from performing a modified range of sedentary work."  *Id*.

The ALJ also addressed Plaintiff's alleged knee pain.  He noted that in 2005, Plaintiff "had a good range of motion of the knees."  *Id*. at 22.  Also in 2005, Plaintiff told Dr. Beth that he had only mild knee pain (at the three to five level).  *Id*. at 22 and 256.  Further, as noted by the ALJ, the Plaintiff does not use any assistive device to walk.  *Id*. at 22.  Based on these factors indicating that Plaintiff has only mild to moderate knee pain, the ALJ found that this pain "does not prevent him from performing a modified range of sedentary work."  *Id*. at 23.

Thus, the ALJ did specifically address Plaintiff's allegations of pain in

his opinion, and he did provide explicit and reasonable reasons for not finding Plaintiff's testimony to be credible.   The ALJ noted the inconsistencies between the Plaintiff's allegations of pain, the objective medical evidence, and Plaintiff's description of his daily activities. Therefore, because the objective medical and other evidence supports the ALJ's conclusion that Plaintiff does not suffer from disabling pain, and instead the evidence shows that Plaintiff can perform sedentary work with the additional limitation of a sit/stand option, the Court finds that the ALJ did not err in his pain and credibility findings.

B.    Treating Physician's Diagnoses.

Plaintiff contends that the ALJ improperly evaluated his treating physician's opinion.   (Doc. 5 at 9.)   Specifically, Plaintiff argues that Dr. Stevenson's opinion should not have been rejected by the ALJ.   *Id*.   A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted).   The weight to be afforded a medical opinion regarding the nature

and severity of a claimant's impairments depends upon, among other things, the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.   *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (finding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Plaintiff's argument is without merit.  The ALJ had good cause  not to give Dr. Stevenson's opinions significant weight because her conclusions were vastly different from the conclusions of so many of Plaintiff's other doctors and chiropractors.  First, the ALJ noted that although Dr. Stevenson

imposed severe limitations on Plaintiff's work ability, "on examination the claimant had full range of motion." (Tr. at 23.) As the ALJ found Dr. Carbonell's more moderate restrictions were inconsistent with the objective medical evidence because Plaintiff had a full range of motion, it only makes sense that the ALJ would also find Dr. Stevenson's extreme restrictions inconsistent with Plaintiff's ability to move fully. *Id*. at 22. Second, as discussed above, Dr. Stevenson's opinions conflicted with the opinions of "Drs. Baker, Capesius, Ots, Alexander, Khalisy, and Khan," who found that "the claimant reported only mild to moderate pain and his pain improved with conservative treatment." *Id*. Third, the ALJ noted that Dr. Stevenson was apparently basing her opinions on Plaintiff's subjective complaints as she did not provide medical images of Plaintiff's back or knee and as she "only treated the claimant for a limited time." *Id*. The limited time of treatment and lack of medical imaging to substantiate Dr. Stevenson's conclusions indicate that these opinions are conclusory and unsubstantiated. Therefore, because Dr. Stevenson's opinions are conclusory and contradictory to the objective medical evidence, the ALJ had good cause to afford her opinions little significance, and he did not err in doing so.

C.      Duty to Develop the Record.

Plaintiff asserts that the ALJ failed to fully develop the record because he did not provide an acceptable RFC assessment and because he did not order a new consultative examination for Plaintiff.  Plaintiff first argues that the ALJ's RFC assessment does not meet the specificity requirements of Social Security Ruling 96-8p because the ALJ rejected the opinion of Plaintiff's most recent treating physician and because he did not refer to the State Agency's RFC Assessment in his opinion.  In this argument, Plaintiff seems to be referring to the requirements of Social Security Ruling 96-6p, which states that although an ALJ is "not bound by findings made by State agency or other program physicians and psychologists, ... they may not ignore these opinions and must explain the weight given to the opinions in their decisions."   1996 WL 374180, at *2; *see also* 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist.").  Also relevant to this issue, however, is Federal Rule of Civil Procedure 61, stating that "[a]t every stage

of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." *See also Perry v. Astrue*, 280 Fed. Appx. 887, 893-94 (11th Cir. 2008); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (factual mistakes made by the ALJ were harmless error because they would not have affected the outcome of the case).

The error Plaintiff alleges here is harmless error, and is therefore, not grounds for remand or reversal.  Although Plaintiff is correct that the ALJ did not refer to the RFC assessment in his opinion, this omission did not affect Plaintiff's substantial rights because consideration of the assessment would not have changed the outcome of this case.  Some of the conclusions from the State agency's RFC assessment of Mr. DeLong include that he can occasionally lift and/or carry up to fifty pounds, that he can frequently lift and/or carry up to twenty-five pounds, that he can stand and/or walk for about six hours in an eight-hour workday, and that he can sit for about six hours in an eight-hour workday.  (Tr. at 275.)  Additionally, the State physician found that "[t]he objective findings do not support [Plaintiff's] level of severity," and Dr. Carbonell's statements about Plaintiff's "work related activities are not supported by the objective evidence and [are]

given little weight."  (Tr. at 279 and 280.)  Although the ALJ did not refer to this assessment specifically in his opinion, he did make similar findings. The ALJ, like the State physician, found Dr. Carbonell's restrictions inconsistent with the objective medical evidence (including restrictions placed on Plaintiff by other doctors), and he also gave "no significant weight" to her findings that Plaintiff could not lift or carry "on a regular or occasional basis."  *Id.* at 22.

Furthermore, the State agency's RFC assessment of Plaintiff actually puts fewer restrictions on Plaintiff's ability to work than the ALJ did.  The ALJ found that Plaintiff could perform "a modified range of sedentary work." *Id.* at 24; *see also* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting a certain amount of walking and standing is often necessary in carrying out job duties.").  So while the State physician found that Plaintiff could occasionally lift up to fifty pounds and could walk, stand, and sit for about six hours of an eight-hour workday, the ALJ actually restricted Plaintiff to only lifting up to ten pounds at a time and

only walking and standing as necessary to carry out job duties.  Therefore, because specifically referring to the State agency's RFC assessment would not have changed the ALJ's opinion or helped Plaintiff's case, this error is harmless and is not grounds for remand or reversal.

Plaintiff also argues that the ALJ's RFC assessment "does not comply with the specificity requirements of Social Security Ruling 96-8p requiring a function by function analysis."  (Doc. 5 at 12-13.)  Social Security Ruling 96-8p requires the RFC assessment to "include a narrative discussion describing how evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence."  1996 WL 374184, at *7; *see also Perry*, 280 Fed. Appx. at 892-93 (upholding ALJ justifying his finding that claimant could perform sedentary work based on claimant's daily activities, claimant's medical records, and the fact that claimant had not sought regular medical treatment).  The ALJ concluded in this case that Plaintiff could perform "a modified range of sedentary work."  (Tr. at 24.)  As explained above, sedentary work includes "lifting no more than 10 pounds at a time" and some walking and standing that may be "necessary in carrying out job duties."  20 C.F.R. § 404.1567(a).

The ALJ did explain this conclusion in his opinion as required by Social Security Ruling 96-8p.  The ALJ explained that he found Plaintiff's pain to be "no more than mild to moderate" based on his daily activities (which include driving his girlfriend to and from work, some household chores, and playing pool with friends) and the objective medical evidence.  (Tr. at 23 and 20.)  The ALJ noted that these activities are not consistent with someone experiencing "disabling symptoms and limitations."  (Tr. at 20.)  The ALJ then summarized the treatment notes and findings from Plaintiff's many doctors.  (Tr. at 21-24.)  The ALJ found the most severe restrictions on Plaintiff's ability to work (imposed by Drs. Carbonell and Stevenson) inconsistent with the other evidence in the record.  (Tr. at 22 and 23.)  Evidence that was deemed credible by the ALJ included restricting Plaintiff from lifting or carrying more than approximately thirty pounds at a time (imposed by Drs. Baker and Capesius); restricting Plaintiff from "prolonged sitting, standing, or bending (also imposed by Drs. Baker and Capesius); and the fact that Plaintiff's condition improved with "conservative care" (noted by Drs. Baker, Capesius, Ots, Khalisy, Alexander, and Khan).  (Tr. at 21-23.)  These are specific findings by the ALJ which support his conclusion that the

Plaintiff is able to work, but he should be limited to a modified range of sedentary work.   Therefore, because the ALJ did provide a specific explanation of his RFC assessment, Plaintiff's argument that he has not met the requirements of Social Security Ruling 96-8p is without merit.

Plaintiff next argues that the ALJ did not fully develop the record because he did not order "a new consultative examination, either orthopedic or neurological, with appropriate imaging." (Doc. 5 at 11.)  An ALJ "has a basic obligation to develop a full and fair record."  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).   An ALJ is not, however, required to order a consultative examination if he can make an informed decision based on the information in the record.  *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).   Additionally, an ALJ does not need to order a consultative examination to establish absolute certainty regarding a claimant's condition, as the Social Security Act requires only substantial evidence to support the ALJ's findings.  *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). The ALJ also does not bear the burden of proving the claimant disabled; rather, that burden falls on the claimant, and the claimant is "responsible

for producing evidence to support his claim." *Ellison v. Barnhart*, 355 F.3d, 1272, 1276 (11th Cir. 2003).

In this case, the ALJ did not err in not obtaining a new consultative examination for Plaintiff because the ALJ was able to make an informed decision based on Plaintiff's description of his daily activities and based on the objective medical evidence in the record.  As discussed above, the ALJ carefully considered the evidence provided by Drs. Anderson, Beth, Carbonell, Baker, Capesius, Ots, Alexander, Khalisy, Khan, and Stevenson. After considering all of this evidence, the ALJ made specific conclusions about which evidence he found most compelling based on its consistency with Plaintiff's own description of his activities and based on the reports of the other doctors.  These findings are supported by substantial evidence because they are consistent both with Plaintiff's activities and with objective medical evidence found in the doctors' treatment notes. Therefore, because the ALJ's findings are supported by substantial evidence (as found in Plaintiff's description of his activities and in the objective medical evidence), he did not err in not ordering Plaintiff a new consultative examination.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Mr. DeLong's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 21<u>st</u> day of <u>November 2008</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**